<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **GEORGIANNA BANAS and ROBERT BANAS,** | |
| *Plaintiffs,* | **Civil Action No. 13-5998** |
| **v.** | **OPINION** |
| **WILLIAM HOUCK, et al.,** | |
| *Defendants.* | |

This matter comes before this Court on Defendants' Motion for Summary Judgment on Plaintiff's Section 1983 claims [Dkt. No. 34]. The motion raises the issue of whether Third Circuit law clearly established as of September 5, 2012, that police officers do not have probable cause to detain involuntarily a person for psychological evaluation based on a family member's tip that the person is suicidal. The Court finds the law on this point is not clearly established and the individual officers are therefore protected by qualified immunity. Plaintiffs' <u>Monell</u> claims are also not supported by facts on the record. Thus, the motion is **GRANTED**.

I.   FACTS

The following facts are undisputed for the purposes of this motion.[1] Judy Ritter, a Las Vegas resident, telephoned the Garfield Police Department and spoke with Desk Sergeant

_____

[1] These facts were included either in Defendants' or in Plaintiffs' statement of undisputed facts. Dkt. No. 34 at 3-9 ("Defs.' Statement"); Dkt. No. 40 at 3-11 ("Pls. Statement"). Where Plaintiffs' facts were disputed, the Court has construed those disputes in Plaintiffs' favor. Defendants' statement of undisputed facts is unopposed by any responsive pleading from Plaintiffs, so these facts are also undisputed. <u>See</u> L. Civ. R. 56.1(a); <u>Schneider v. Shah</u>, 2012 U.S. Dist. LEXIS 49379, at *6-7 (D.N.J. Apr. 9, 2012). Where the Plaintiffs' and Defendants' statements of fact conflict, the Court has considered those facts to be disputed.

Camiscoli.  Defs.' Statement ¶ 1.  Ms. Ritter reported that she had spoken with Plaintiff Georgianna Banas, her daughter, earlier.  Id. ¶ 5.  Ms. Ritter said she feared for her daughter's life and thought Mrs. Banas was suicidal because her husband had just kicked her son out of the house for being disrespectful.  Id.  When asked whether her daughter had any weapons, Ms. Ritter indicated she had pills.  Id. ¶ 2.  Sergeant Camiscoli subsequently dispatched officers to Mrs. Banas' home stating that "[w]e've got a female that's threatening to commit suicide with pills."  Id.; Dkt. No. 34, Grodek Cert., Ex. A at 3:1-4.  Defendants William Houck, Sean Delahnty, Ben Montelabano, and Glenn Reno responded to the Banas' home.  Defs.' Statement ¶ 3.

When the police arrived, Mrs. Banas answered the door, shut it, and then reopened the door and allowed the police to enter.  Pls.' Statement ¶¶ 6-9.  She had unpleasant contact with Officer Houck in the past when she received a traffic ticket from him, so she indicated that she did not want Officer Houck in the house.  Id. ¶ 10-11.  Officer Montelabano told her there was a call regarding an allegedly suicidal party.  Id. ¶ 9.  Mrs. Banas indicated there was nothing wrong with her.  Id. ¶ 25.  Mrs. Banas then called Ms. Ritter, spoke to her, and handed the phone to Officer Montelabano, who also spoke with her.  Defs.' Statement ¶ 6.  During that call, Mrs. Banas' husband, Robert Banas, also assured Ms. Ritter that her concerns were erroneous.  Pls.' Statement ¶ 23.  When asked, Mr. Banas told the officers that he was safe and stated that his wife never threatened suicide, was not depressed or anxious, and did not exhibit suicidal tendencies.  Id. ¶ 26.

Nonetheless, Mrs. Banas stated that she was prepared to submit voluntarily to screening at Bergen Regional Medical Center.  Defs.' Statement ¶ 8.  Officer Houck insisted that Mrs. Banas go to Bergen Regional Medical Center to be evaluated.  Id. ¶ 9.  He called an ambulance to take her there, rather than allowing her to drive separately.  Id. ¶ 11.  Mrs. Banas was permitted to change clothes alone before going to the hospital and was never handcuffed or otherwise

restrained.  Pls.' Statement ¶ 44.  She was subsequently evaluated at Bergen Regional and discharged after a total of five to six hours with no findings.  Id. ¶ 45.

The Garfield Police Department's investigation report of January 9, 2013, found several errors in the investigation, including an inadequate search for pills or medication, failure to request a psychological screener, and inappropriately permitting Mrs. Banas to be alone.  Id. ¶ 47.  Mrs. and Mr. Banas (collectively, "Plaintiffs") subsequently sued Officers Houck, Montelabano, Reno, Delahnty, the Garfield Police Department, and the City of Garfield (collectively, "Defendants"). The federal causes of action alleged are as follows: (1) Section 1983 violations of Mrs. Banas' constitutional rights by individual officers; (2) Section 1983 violations by customs or policies of the City of Garfield; and (3) a failure adequately to train the officers involved.  Defendants move for summary judgment on these counts.  For the reasons below, the Court **GRANTS** Defendants' motion.

## II.   STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."  Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).  All facts and inferences must be construed in the light most favorable to the non-moving party.  Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

## III.   ANALYSIS

## A.  Individual Claims Under Section 1983 (Count I)[2]

Plaintiffs claim that Mrs. Banas was involuntarily committed by the Garfield police officers without probable cause in violation of her Fourth Amendment right against illegal search and seizure.  Defendants argue they had probable cause and, in any event, the doctrine of qualified immunity bars Plaintiffs' claim.  The Court agrees.

Qualified immunity protects government officials from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity applies if either of two considerations are met.  First, an officer is not liable unless there was a violation of a constitutional or federal statutory right.  See Siegert v. Gilley, 500 U.S. 226, 232 (1991), overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009).  Second, an officer is not liable unless that right was "clearly established" at the time of the violation.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  The Court may choose to address these considerations in any order.  Pearson, 555 U.S at 236.  Here, the Court chooses to resolve whether the right is "clearly established" first, and finds that consideration to be dispositive.  The Court therefore need not review whether the actions in this case amount to a constitutional violation.

---

[2] Defendants seek dismissal of Count I in its entirety.  Although Count I contains a passing reference to 42 U.S.C. § 1986, see Compl. ¶ 16, Plaintiffs do not attempt to reserve their Section 1986 claim or otherwise support it in their motion papers.  A Section 1986 claim requires an underlying violation of 42 U.S.C. § 1985.  Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980).  In order to prove a violation under either of these sections, a plaintiff must show a private conspiracy predicated on "racial, or perhaps otherwise class-based, invidiously discriminatory animus. . . ."  Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); see also Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980).  Plaintiffs present no evidence of "invidiously discriminatory animus" on the basis of their race or class.  As such, the claim under Section 1986 fails and is also dismissed.

4

When reviewing whether a right is "clearly established," the right must be defined with particularity. The Supreme Court requires that "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 482 U.S. at 640. The specific action in question need not have previously been held unlawful, but "in the light of pre-existing law the unlawfulness must be apparent." Id.

Whether a legal right is "clearly established" is a question of law. Elder v. Holloway, 510 U.S. 510, 516 (1994). In order to determine whether the law is clearly established, the Court must analyze "case law existing at the time of the defendant's alleged improper conduct." McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001). "Where a challenged police action presents a legal question that is 'unusual and largely heretofore undiscussed' . . . or where there is 'at least some significant authority' that lends support of the police action," qualified immunity prevents suit. Doe v. Groody, 361 F.3d 232, 243 (3d Cir. 2004).

Here, the undisputed facts indicate that the officers were responding to a call from an identified source—Ms. Ritter—who was closely related to Mrs. Banas and who expressed concern that Mrs. Banas was suicidal. That source held by her statement even after Mrs. Banas called her while the police were in the house. Thus, in order for the law to be clearly established, binding case law should establish that reliance upon a family member alone cannot create probable cause for detention.

The law on this issue is not clearly established in the Third Circuit. Plaintiffs do not cite a single case to the contrary, and several cases permit detention in circumstances roughly analogous to this case. Thus, a reasonable officer could believe he had probable cause to require Mrs. Banas' psychological evaluation. This Court also concludes that in light of then-existing law, the unlawfulness of the actions here would not be apparent to the officers.

The most analogous case in this jurisdiction is <u>Hohsfield v. Township of Manchester</u>.  No. 09-5377, 2010 WL 3724138, at *4 (D.N.J. Sept. 14, 2010).  There, the police received a phone call from the plaintiff's girlfriend indicating he had overdosed on sleeping pills.  Plaintiff admitted that he had taken sleeping pills, but denied overdosing.  That exchange was sufficient to create probable cause for the police to require a mandatory psychological evaluation.

Third Circuit precedent also indicates that a tip from an identified informant may be sufficient to create probable cause for an arrest in certain circumstances.  In <u>United States v. Noble</u>, 326 F. App'x 125, 128 (3d Cir. 2009), Mr. Noble's former girlfriend spoke with an officer and provided detailed information indicating that Mr. Noble possessed guns and drugs and was driving without a license in violation of his parole.  That, combined with corroboration that Mr. Noble had two citations for driving without a license, was sufficient to search his home.  <u>Id.</u>  Similarly, the Third Circuit stated in 2013 (after the events at issue here) that "[i]t is an open question in this Circuit whether an officer has probable cause to arrest an individual for trespassing when that individual is involved in a property ownership dispute based exclusively on the statements of the party asserting a contrary interest in the property."  <u>Bailey v. Gibbons</u>, 508 F. App'x 136, 139 (3d Cir. 2013).  Though arrests made over property disputes are, of course, a different context, this precedent could lead a reasonable police officer to believe he had probable cause to require Mrs. Banas to be psychologically evaluated.

Other circuits agree that third party tips may be sufficient to create probable cause in certain circumstances.  In the context of mandatory psychological evaluations, tips have frequently been held to create probable cause when accompanied by other indicia of reliability, particularly when the tip is from a family member.  <u>See, e.g.</u>, <u>Monday v. Oullette</u>, 118 F.3d 1099, 1102 (6th Cir. 1997) (probable cause where mental health worker indicated plaintiff said he ingested alcohol and

pills to commit suicide and the officer found the plaintiff was drinking alcohol, appeared intoxicated and depressed, and twenty Xanax pills were missing); Maag v. Wessler, 960 F.2d 773, 775-76 (9th Cir. 1992) (family members' concern about Maag's health, when combined with evidence of poor physical and mental condition, provided probable cause); Harris v. Pirch, 677 F.2d 681, 689 (8th Cir. 1982) (husband's request for assistance, when combined with plaintiff's recent hospitalization, upset behavior, and partially empty bottle of pills provided probable cause). And some cases have held that an informant's tip alone may be sufficient to create probable cause. See United States v. Cooper, 1 Fed. App'x 399, 403 (6th Cir. 2001) ("An informant's tip, by itself, can suffice to create probable cause if the tip appears reliable under the totality of the circumstances.") (citing Illinois v. Gates, 462 U.S. 213, 230 (1983)); see also United States v. Tillman, 404 Fed. App'x 949, 952 (6th Cir. 2010) ("Unlike a tip from an anonymous informant, a 'tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated' is far more trustworthy.") (quoting Florida v. J.L., 529 U.S. 266, 270 (2000)).

    One of the few cases which held police did not have probable cause to impose mandatory psychological evaluation is Fisher v. Harden.  398 F.3d 837 (6th Cir. 2005) (reversing grant of summary judgment).   There, unlike here, the informant's information was shown to be indisputably inaccurate prior to the arrest.  Id. at 843.  Additionally, Fisher is not binding precedent in this jurisdiction, so it does not clearly establish the law controlling police conduct here.

    No binding precedent clearly establishes that the police officers in this case did not have probable cause, [3] and some precedent indicates otherwise.  Based on the cases discussed, the Court

---

[3] Though case law need not address the precise issue at stake if "in the light of pre-existing law the unlawfulness [of the disputed action is] apparent," Anderson, 483 U.S. at 640, the Court is convinced that no such apparent unlawfulness has been shown here.

determines that the alleged violation of Mrs. Banas' constitutional rights was not clearly established in the relevant timeframe.  As a result, qualified immunity applies.  The Court grants summary judgment in favor of Defendants on this count.

**B.  City's Policy or Custom of Violating Rights (Count II)**

Plaintiffs' second count is a Monell claim against the City of Garfield.  See Monell v. Dep't of Soc. Serv., 436 U.S 658 (1978).  Plaintiffs argue that the City "allowed actions as executed by Police Officer Houck to continue and thus serve as a continuing governmental policy of [sic] practice" since Officer Houck had been "subject to a number of disciplinary actions."  Pls. Opp. at 19.  This, according to Plaintiffs, imposes Monell liability.  The Court disagrees.

The City cannot be liable under Section 1983 under the doctrine of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, the City must have actually known of the disputed conduct and acquiesced in it.  Id.  "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well-settled' as to virtually constitute law."  Mulholland v. Gov't Cnty. of Berks, Pa., 706 F.3d 227, 237 (3d Cir. 2013) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d. Cir. 1990)).

Plaintiffs have not presented any evidence of a custom or practice in Garfield by which officers detain individuals without probable cause.  Instead, Plaintiffs rely on a single fact, namely: that Officer Houck received "more than one" but not "more than five" complaints (based on unknown concerns from unknown people) and was counselled for anger management at least once. Dkt. No. 40, Schwartz Cert., Ex. C at 15, 23.  That is not enough.  The mere fact that unspecified complaints were made against Officer Houck and he was given counseling for anger management,

8

without more, cannot show that the City had a policy or custom of deliberate indifference to Plaintiff's Fourth Amendment rights.

The Third Circuit's decision in <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966 (3d Cir. 1996), is instructive.  In that case, the plaintiff brought a <u>Monell</u> claim against the city, alleging that the officers used excessive force against him and that the city systematically ignored complaints of excessive force by these officers.  Plaintiff put forward testimony that the city's review process did not consider prior complaints and the officer in question had several written civilian complaints concerning four violent encounters in three years but was never disciplined.  <u>Id.</u> at 969.  This evidence was sufficient to preclude judgment as a matter of law against the plaintiff.  <u>Id.</u> at 974.  Here, by contrast, there is no evidence that the officers ever received complaints for detention without probable cause and no testimony that the city's disciplinary system is somehow defective.

Because Plaintiffs provide no other basis for a finding of custom or policy, <u>see</u> Pls.' Opp. at 19-20, the Court must grant summary judgment on this count in favor of Defendants.  <u>See</u> <u>Benhaim v. Borough of Highland Park</u>, No. 11-2502, 2015 WL 105794, at *7 (D.N.J. Jan. 6, 2015) (granting summary judgment against a <u>Monell</u> claim based on a policy or custom of indifference to wrongful acts because "[t]here is no evidence here . . . of a pattern of exonerations.").

### C.  Failure to Train Claim (Count III)

Plaintiffs allege that Officer Houck was inadequately trained by the City.  "To bring a claim of failure to train under § 1983, a Plaintiff must (1) identify the deficiency in training; (2) prove that the deficiency caused the alleged constitutional violation; and (3) prove that the failure to remedy the deficiency constituted deliberate indifference on the part of the municipality." <u>Lapella v. City of Atl. City</u>, No. 10-2454, 2012 WL 2952411, at *6 (D.N.J. July 18, 2012).  Plaintiff has not presented facts demonstrating any of these three requirements.

Plaintiffs again rely on a single fact.  Officer Houck did not follow appropriate procedure; his training must have been inadequate, the argument goes, because he didn't act correctly.  But that reasoning inherently converts every claim of impropriety against an individual officer into a claim against the City for failure to train.  That is not the law.  See Simmons v. City of Philadelphia, 947 F.2d 1042, 1060 (3d Cir. 1991) ("[A] municipality's deliberately indifferent failure to train is not established by . . . presenting evidence of the shortcomings of an individual").  Plaintiffs cite no cases supporting their broad-ranging theory.  Without more than the single potentially wrongful act identified here, the Court must grant summary judgment in favor of Defendants on this cause of action.  See Franks v. Cape May Cnty., No. 07-6005, 2010 WL 3614193, at *10 (D.N.J. Sept. 8, 2010) (dismissing a failure to train claim for failing to allege a specific omission with the "highly predictable consequence" of the unlawful behavior).

### D.  Plaintiffs' State Law Claims

Plaintiffs allege various state law claims, including (1) a claim that the "actions of Police Officer Houck as detailed above were intentional, malicious, and without probable cause and caused damage to the plaintiff," Compl. at 5 ¶ 2; (2) a claim for loss of consortium, id. at 5 ¶ 1-3; and (3) a claim for civil rights violations of the New Jersey Constitution, id. at 3 ¶ 17.  The merits of these claims have not been meaningfully briefed by either party.  This Court has resolved the federal claims at issue, and declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the state claims.  The remaining claims are therefore remanded to state court.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED**. An appropriate order accompanies this opinion.

Date: June 4, 2015                              /s/ *Madeline Cox Arleo*_____
                                                        **Hon. Madeline Cox Arleo**

UNITED STATES DISTRICT JUDGE